**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GS HOLISTIC, LLC <br><br> v. | § <br> § <br> § <br> § | |
| SUBLIME SMOKE & VAPE LLC, d/b/a SUBLIME SMOKE &VAPE, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-255-SDJ-AGD <br> LEAD CASE |
| DENTON SMOKE SHOP LLC, d/b/a DENTON SMOKE STOP, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-241-SDJ-AGD |
| KASKI KALI LLC, d/b/a KUSH CIGAR, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-249-SDJ-AGD |
| SUPREME SMOKE AND VAPE LLC, d/b/a SUPREME SMOKE AND VAPE, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-256-SDJ-AGD |
| CITY SMOKE SHOP INC., d/b/a CITY SMOKE SHOP, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-264-SDJ-AGD |
| RAD GLASS, INC, d/b/a PPV PIPES, PAPERS, & VAPES, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-265-SDJ-AGD |
| SERANE LLC, d/b/a SMOKE JOINT, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-266-SDJ-AGD |
| AZZADNEEN GROUP #2, LLC, d/b/a SPARK SMOKE, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-268-SDJ-AGD |
| SS & CO INVESTMENTS INC, d/b/a CBD & TOBACCO VILLA, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-283-SDJ-AGD |
| WIZARD'S SMOKE SHOP LLC, d/b/a WIZARD'S VAPOR BAR AND SMOKE SHOP, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-284-SDJ-AGD |
| ABN BUSINESS GROUP LLC, d/b/a CLOUD VILLE VAPOR AND SMOKE SHOP, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-365-SDJ-AGD |

| HOLLOWAY FOUNDATION LLC, <br> d/b/a SMOKERS XCHANGE, ET AL. | § <br> § <br> § | CIVIL NO. 4:23-CV-626-SDJ-AGD |
|---|---|---|

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Plaintiff GS Holistic, LLC's Motion for Default Final Judgment Against Both Defendants (Dkt. #13) in member case 4:23-cv-241-SDJ-AGD. Having considered the motion and the relevant pleadings, the court finds that Plaintiff's Motion for Default Final Judgment Against Both Defendants (Dkt. #13) should be **GRANTED in part and DENIED in part.**

## BACKGROUND

*Factual History*

Plaintiff GS Holistic, LLC ("GS") owns the trademarks to Stündenglass, a line of branded glass infusers and accessories (Dkt. #5 at 2). Specifically, GS owns the following federally registered trademarks:

1) U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011;

2) U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034; and

3) U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

(Dkt. #5 at 3). GS has approximately 3,000 authorized stores in the United States (Dkt. #5 at 4). According to Plaintiff, Defendants have been selling non-Stündenglass products bearing the Stündenglass markings (Dkt. #5 at 5–6). On February 8, 2023, GS's investigator traveled to the Denton Smoke Shop location and purchased a non-Stündenglass glass infuser displaying a

Stündenglass mark for $432.99 (Dkt. #1 at 6). Plaintiff alleges that the sale of the non-Stündenglass products violates 15 U.S.C. §§ 1114 and 1125(a) (Dkt. #5 at 10–12).

*Procedural History*

GS initiated this lawsuit by filing a complaint on March 24, 2023, in the Eastern District of Texas, Sherman Division[1] (Dkt. #1). On April 24, 2023, GS filed an amended complaint (Dkt. #5). On May 31, 2023, Plaintiff filed a return of service, reflecting that Defendant Denton Smoke Shop was served on April 22, 2023 (Dkt. #7). On June 22, 2023, GS filed a Motion for Extension of Time to Perfect Service Upon Defendant Shahzad S Ali (Dkt. #8), which the District Court granted on June 26, 2023 (Dkt. #9). On August 21, 2023, Plaintiff filed a return of service, reflecting that Defendant Shahzad S Ali was served on June 22, 2023 (Dkt. #10). On August 24, 2023, GS requested a clerk's entry of default against Defendants (Dkt. #11) which the clerk entered the next day (Dkt. #12). On September 25, 2023, GS filed the present motion for default judgment pursuant to Federal Rule of Civil Procedure 55, seeking statutory damages, litigation expenses and costs, injunctive relief, and destruction of Defendants' Stündenglass products (Dkt. #13). To date, neither Defendant has answered or otherwise appeared.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not

---

[1] This case, 4:23-cv-00241, is a member case in lead case 4:23-cv-00255. The following are the other consolidated member cases: 4:23-cv-00249, 4:23-cv-00256, 4:23-cv-00264, 4:23-cv-00265, 4:23-cv-00266, 4:23-cv-00268, 4:23-cv-00283, 4:23-cv-00284, 4:23-cv-00365, and 4:23-cv-00626. Plaintiff has also filed several lawsuits in other districts.

plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.*

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted); *see AAR Supply Chain Inc. v. N & P Enters., LLC*, No. 3:16-CV-2973, 2017 WL 5626356, at *1 (N.D. Tex. Nov. 22, 2017) (explaining that default judgments "are available only when the adversary process has been halted because of an essentially unresponsive party") (citation and internal quotation marks omitted). While "[t]he Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments," this policy "is 'counterbalanced by considerations of social goals, justice, and expediency, a weighing process that lies largely within the domain of the trial judge's discretion.'" *Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. v3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (cleaned up) (quoting *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999)). Rule 55(b)(2) grants district courts wide latitude in this determination, and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). And even though entry of a default judgment is reviewed for abuse of discretion, *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018), because of "the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 n.1 (5th Cir. 1992) (brackets omitted) (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 734 (5th Cir. 1984)).

## ANALYSIS

In this case, because Defendants have not answered or otherwise appeared and because GS has obtained an entry of default, GS has met the first two requirements for a default judgment. Thus, the only remaining issue is whether a default judgment is warranted. *N.Y. Life Ins. Co.*, 84 F.3d at 141. Courts in the Fifth Circuit utilize a three-part test to determine whether a default judgment is appropriate: (1) whether the entry of default is procedurally warranted, (2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and (3) what form of relief, if any, a plaintiff should receive. *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citations omitted). Applying this framework, the court finds that default judgment is appropriate.

### *Whether Default Judgment is Procedurally Warranted*

The court must first determine whether default judgment is procedurally warranted. The Fifth Circuit in *Lindsey* recognized six factors relevant to the inquiry of whether default judgment is procedurally warranted:

> whether material issues of fact exist; whether there has been substantial prejudice; whether the grounds for default are clearly established; whether the default was caused by a good faith mistake or excusable neglect; the harshness of a default judgment; and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). GS argues that these factors demonstrate that default judgment is procedurally warranted (Dkt. #13 at 6). After reviewing GS's motion, the court agrees that default judgment is procedurally warranted because the grounds for default are established, Defendants will not be substantially prejudiced, and there is no evidence of a good faith mistake by Defendants.

**Material Issues of Fact**

There are no material issues of fact present in this case. In the event of default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal citations omitted). Here, because Defendants did not answer GS's amended complaint or otherwise appear, Defendants admit GS's well-pleaded allegations of fact, except regarding damages, as explained below. *Id.* Therefore, there are no material issues of fact.

**Substantial Prejudice or Harsh Result**

Entry of default judgment would not be harsh or result in substantial prejudice to Defendants. Defendants did not answer GS's amended complaint or otherwise appear. Further, Defendants received ample notice of the suit: GS filed its complaint on March 24, 2023 (Dkt. #1), an amended complaint on April 24, 2023 (Dkt. #5), and all summonses were returned executed by June 22, 2023 (Dkt. #10). And, taking the well-pleaded facts as true, GS has asserted a valid cause of action. *Lindsey*, 161 F.3d at 893. Furthermore, GS properly requested entry of default in its favor (Dkt. #11). Thus, a default judgment is not unusually harsh because Defendants have had ample opportunity to respond after receiving notice of this action.

Moreover, because Defendants' failure to file responsive pleadings "threatens to bring the adversary process to a halt," GS has experienced prejudice "in pursuing its rights afforded by law." *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citation omitted); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citation omitted).

Accordingly, the record supports a finding that a default judgment would not be harsh or result in substantial prejudice.

### Grounds for Default Judgment

The grounds for default judgment are clearly established. Default occurs when a defendant fails to plead or otherwise respond to the amended complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *N.Y. Life Ins.*, 84 F.3d at 141. The record indicates that GS perfected service of process on Defendants (Dkts. #7; #10). Therefore, Defendants were required to serve an answer to the amended complaint or otherwise respond. However, as of this date, Defendants have not answered or filed any responsive pleadings to the request for entry of default or the present motion for default judgment. When a defendant's failure to respond is "plainly willful, as reflected by [a defendant's] failure to respond to either summons and complaint, the entry of default, or motion for default," then grounds for default are clearly established. *Graham*, 2017 WL 2600318, at *2 (alteration in original) (citation omitted). Thus, the court finds that the grounds for default against Defendants are clearly established.

### Excusable Neglect or Good Faith Mistake

The record reflects that Defendants did not default due to excusable neglect or a good faith mistake. Again, GS properly served Defendants (Dkt #7; Dkt. #10). Defendants did not respond, nor did they offer evidence that the unresponsiveness was due to a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Further, nothing in the record indicates that GS has contributed to the delay of this action or otherwise given the court any reason to set aside the clerk's entry of default. Accordingly, GS has met the procedural requirements for default judgment.

***Basis for Default Judgment in the Pleadings***

After establishing that default is procedurally warranted, the court must determine if there is a sufficient basis for judgment. *Nishimatsu*, 515 F.2d at 1206. Although Defendants, at this stage, are deemed to have admitted the allegations set forth in the amended complaint, the court must review the pleadings to determine whether the amended complaint presents a sufficient basis for relief. *Id.* The Fifth Circuit "draw[s] meaning from the caselaw on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted)). This "low threshold" pleading standard "is less rigorous than that under Rule 12(b)(6)." *Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018).

The court also notes that it does not address GS's claim for false designation of origin under 15 U.S.C. § 1125(a) because GS only seeks to protect registered trademarks. *See* (Dkt. #5). As GS only seeks to protect registered trademarks, 15 U.S.C. § 1114(1) is the appropriate vehicle for its claim, rather than false designation of origin. *Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, 80 F.4th 607, 616 (5th Cir. 2023).

**Liability of Shazad S Ali**

Shazad S Ali may be liable to GS in his individual capacity. "A corporate officer may be personally liable for trademark infringement when an individual performs the act or does things that the patent or trademark law protects against." *Virtuoso, Ltd. v. Web Deals Direct, LLC*, No. 3:20-CV-383-K, 2021 WL 784140, at *4 (N.D. Tex. Jan. 29, 2021) (citing *Taylor Made Golf Co., Inc. v. MJT Consulting Grp.*, LLC, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003). Specifically, "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-cv-3237-D, 2012 WL 1571080, at *4 (N.D. Tex. May 4, 2012) (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)).

In its amended complaint, GS claims that Ali "authorized, directed, and/or participated in [Denton Smoke Stop's] offer for sale, in commerce, of the Counterfeit Goods. [Shazad S Ali's] acts were a moving, active, and conscious force behind [Denton Smoke Stop's] infringement of the Stündenglass Trademarks" (Dkt. #5 at 7). These factual allegations are sufficient for GS to hold Ali liable in his individual capacity, so long as its other factual allegations are sufficient to establish trademark infringement. *See John Crane Prod. Sols.*, 2012 WL 1571080, at *4 ("Because the court has held . . . that JCPS has stated a plausible trademark infringement claim against the defendant corporations, the court need only determine whether JCPS has adequately alleged that Rutledge participated in the infringement.").

**Liability of Defendants**

Defendants are also likely liable to GS for infringement of a registered mark. The Lanham Act creates "separate causes of action for infringement of a registered mark and an unregistered

mark." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). Section

32(1) of the Lanham Act, which is codified as 15 U.S.C. § 1114(1), "creates a cause of action for

infringement of registered marks[.]" *Rex Real Est. I,* 80 F.4th at 616. On the other hand, Section

43(a), which is codified as 15 U.S.C. § 1125(a), "creates a cause of action for infringement of

unregistered marks." *Id.* To prevail on either cause of action, a plaintiff must show that "(1) it

possesses a legally protectable trademark and (2) [the defendant's] use of this trademark 'creates

a likelihood of confusion as to source, affiliation, or sponsorship.'" *Rex Real Est. I*, 80 F.4th at 616

(quoting *Streamline Prod. Sys. Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017)).

Here, GS has demonstrated that the Stündenglass trademarks are legally protectable, and

that Defendants' use of the trademarks is likely to create confusion. First, GS possesses three

legally protectable trademarks. Proof that a mark has been registered with the United States Patent

and Trademark Office "constitutes prima facie evidence that the mark is valid, and that the

registrant has the exclusive right to use the registered mark in commerce with respect to the

specified goods or services." *Amazing Spaces, Inc.*, 608 F.3d at 237 (citing 15 U.S.C. §§ 1057(b),

1115(a)). GS has registered each of the following trademarks with the United States Patent and

Trademark Office: U.S. Trademark Registration Number 6,174,291, U.S. Trademark Registration

Number 6,174,292, and U.S. Trademark Registration Number 6,633,884 (Dkt. #5 at 3). Therefore,

GS has made a prima facie case that the Stündenglass trademarks are valid and that it has the

exclusive rights to use these marks in commerce with respect to the specified goods. *Amazing*

*Spaces, Inc.*, 608 F.3d at 237 (citations omitted).

Second, GS has shown that Defendants' conduct is likely to cause confusion. The Fifth

Circuit has identified non-exhaustive "digits of confusion" to guide courts in determining whether

use of a mark has created a likelihood of confusion. *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019). These digits include:

> (1) [s]trength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.

*Id.* (citation omitted). However, this test is unnecessary when the allegedly infringing product uses the exact same mark that a plaintiff owns. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008). GS claims that Defendants used marks in Defendants' counterfeit products that are "identical with, or substantially indistinguishable from, the Stündenglass Marks on goods covered by the Stündenglass Marks" (Dkt. #5 at 9). Therefore, GS has shown that a likelihood of confusion exists as to Defendants' conduct. Accordingly, its amended complaint is sufficiently well-pled to support judgment in its favor on its federal trademark infringement claims under 15 U.S.C. § 1114(1).

### *Form of Relief*

"A defendant's default concedes the truth of the allegations of the [c]omplaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). A hearing or detailed affidavits establishing the facts necessary to award damages are usually required unless the amount of damages is capable of mathematical calculation by reference to the pleadings and supporting documents. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Here, GS requests statutory damages, litigation expenses and costs, injunctive relief, and destruction of the allegedly infringing products (Dkts. #5 at 10–14; #13 at 9–13). The court finds that GS's affidavits are sufficiently detailed such that the court can determine the damages award without a hearing.

**Statutory Damages**

GS requests an award of statutory damages for trademark infringement under 15 U.S.C. § 1117(c) (Dkts. #5 at 12; #13 at 9–12). The court has wide discretion to determine a just amount for statutory damages for trademark infringement. *Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. CV H-16-35, 2016 WL 6436557, at *3 (S.D. Tex. Oct. 31, 2016). Further, a plaintiff may elect to receive statutory damages instead of actual damages any time before final judgment is entered. 15 U.S.C. § 1117(c). When a counterfeit mark is present, a plaintiff may receive statutory damages of either:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

*Id.* Statutory damages are particularly helpful in the default judgment context because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible." *Rolex Watch U.S.A., Inc. v. Munn*, No. 6:19-CV-323-JCB, 2019 WL 7500499, at *3 (E.D. Tex. Nov. 7, 2019) (quoting *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)); *Viahart, LLC v. Chickadee Bus. Sols., LLC*, No. 6:19-CV-406-JCB, 2021 WL 6333033, at *14 (E.D. Tex. July 2, 2021).

GS requests that the court award it $150,000.00, i.e. $50,000.00 per infringed trademark (Dkt. #13 at 11–12). "Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts." *Rolex Watch U.S.A.*, 2019 WL 7500499, at *3 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *Rolex Watch, USA, Inc. v. Brown*, No. 1-CV-9155, 2002 WL 1226863,

at *2 (S.D.N.Y. 2002) (finding that where "the issue is statutory damages," the court can hold an

inquest into damages "on a paper record" rather than through an in-person court hearing).

> Courts consider the following factors in setting statutory damage awards:
>
> (1) expenses saved and profits reaped; (2) revenues lost by plaintiff; (3) the value of the copyright; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants.

*Better Keiki, LLC v. MairicoDirect*, No. 4:17-CV-850, 2018 WL 5305571, at *6 (E.D. Tex. Aug.

29, 2018) (citing *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d

Cir. 1986).

First, GS has not provided any information regarding Defendants' financial information.

Therefore, this factor is neutral.

Second, GS claims that its 2021 sales for Stündenglass products would have been

approximately $38,400,000.00 if the sale of counterfeit Stündenglass products had not impacted

the market (Dkt. #13, Exhibit 3 at 2). However, GS's 2021 sales for Stündenglass products were

approximately $9,600,000.00 (Dkt. #13, Exhibit 3 at 2). GS does not provide any rationale for why

its 2021 sales of Stündenglass products would have been four times higher if the market had not

been impacted by counterfeit Stündenglass products. *See* (Dkt. #13). Therefore, this factor is

neutral.

Third, Christopher Folkerts, the Chief Executive Officer of GS Holistic and the affiant of

GS's supporting affidavits, claims that the Stündenglass trademarks "have earned a new meaning,

as owning a Stündenglass product is considered among the best portable vaporizers available"

(Dkt. #13, Exhibit 2 at 2). Folkerts claims that this goodwill and reputation derives from the "high

quality" of GS's products (Dkt. #13, Exhibit 2 at 2). However, Folkerts has not provided objective

13

measures demonstrating the value of the Stündenglass trademarks. *See* (Dkt. #14, Exhibits 2–3). Therefore, this factor is neutral.

Fourth, an increased statutory damages award would create a strong deterrent effect. Folkert claims that GS estimates that three out of every ten products sold are counterfeit (Dkt. #13, Exhibit 3 at 2). Further, this court has found over 30 cases in which one or more defendants were found to infringe on the Stündenglass trademarks through the sale of counterfeit products. *See*, *e.g.*, *GS Holistic, LLC v. Purple Haze of Seminole, LLC*, No. 8:22-CV-2113, 2023 WL 3629705 (M.D. Fla. May 8, 2023). Therefore, the sale of counterfeit Stündenglass products appears to be common. This factor favors an increased statutory damages award.

Fifth, the court declines to find that Defendants willfully infringed the Stündenglass trademarks. Courts "have found willful conduct where a defendant acts with 'reckless disregard for, or [with] willful blindness' toward a trademark owner's rights." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (quoting *Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005)). Willful blindness occurs where a defendant "knows his actions constitute an infringement; the actions need not have been malicious." *Better Keiki*, 2018 WL 5305571, at *6 (citing *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). "Further, a defendant's failure to defend itself allows the court to infer willfulness." *Viahart*, 2021 WL 6333033, at *14 (citation omitted). Here, other than a discrepancy in price and this inference, no evidence of willful infringement exists. *See* (Dkts. #10; #13). Without greater evidence of willful infringement, the court does not find that Defendants willfully infringed the Stündenglass trademarks.

14

Sixth, although Defendants have not responded to this lawsuit, GS has not provided any information on whether Defendants have cooperated with it in the events leading up to and during the litigation. Therefore, this factor is neutral.

Seventh, GS has not shown that statutory damages will deter future infringement by Defendants. GS has only shown the sale of one infringing product by Defendants (Dkt. #13, Exhibit 2 at 2). Further, GS has not demonstrated that Defendants continue to sell products bearing infringing marks.[2] Therefore, this factor is neutral.

Overall, the court finds that an award of $50,000 per infringed upon trademark is inappropriate. The only factor supporting an award of damages based on the evidence GS presented is the deterrence of counterfeiters other than Defendants. Notably, GS has not shown that Defendants' infringement was willful; it has only provided evidence that Defendants sold one infringing product (Dkt. #13, Exhibit 2 at 2). Considering that the only supporting factor does not relate to Defendants' conduct and GS has only established a single infringing sale, the court awards statutory damages of $1,000 per infringed upon mark per defendant to GS, for a total of $3,000 from Shazad S Ali and $3,000 from Denton Smoke Shop LLC.

**Costs of Litigation**

Pursuant to 15 U.S.C. § 1117(a), GS is entitled to recover "the costs of the action" because of the violations of its federally registered trademarks. GS requests $402.00 for the filing fee, $285.00 for the process server fee, and $497.99 for investigation fees (Dkt. #13 at 12). Courts within the Fifth Circuit have limited costs of the action to the categories within 28 U.S.C. § 1920.

---

[2] Although GS claims in its amended complaint that Defendants continue to sell counterfeit Stündenglass products, this claim alone is not sufficient for the purposes of damages (Dkt. #5 at 6). GS has not shown that Defendants continue to sell counterfeit Stündenglass products for the purposes of proving damages because no supporting affidavit suggests that situation. *See United Artists Corp.*, 605 F.2d at 857 (explaining that a hearing or detailed affidavits establishing the facts necessary to award damages are usually required unless the amount of damages is capable of mathematical calculation by reference to the pleadings and supporting documents).

*See, e.g., Roor Int'l BV v. AKS1 Enter., Inc.*, No. H-18-3835, 2019 WL 3500911, at *4 (S.D. Tex. Aug. 1, 2019). The available categories for costs do not include private process servers or investigation fees.[3] 20 U.S.C. 1920. Therefore, the court awards only the filing fee of $402.00 for the costs of the action.

### Permanent Injunction

The court declines to issue GS's requested permanent injunction. The party seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *EBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) (explaining that a plaintiff must satisfy "the traditional four-factor test" before "permanent injunctive relief can be awarded"). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. *Id.* GS did not analyze these factors in its request for a permanent injunction (Dkt. #13 at 12–13). Because GS did not demonstrate the requisite factors, the court declines GS's request for an injunction.

### Destruction of Infringing Products

The court will require Defendants to deliver all infringing products to GS for destruction. 15 U.S.C. § 1118 authorizes courts to order the delivery and destruction of products bearing an

---

[3] The recoverable categories of costs under 28 U.S.C. 1920 include: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under 28 U.S.C. 1923; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

infringed registered trademark. GS requests that the court order Defendants to deliver all products bearing the Stündenglass trademarks to GS for destruction (Dkt. #13 at 13).

GS has demonstrated that Defendants sold at least one counterfeit Stündenglass product (Dkt. #13, Exhibit 2 at 2). Therefore, the court will grant GS's request with the modification that it only applies to counterfeit Stündenglass products.

Accordingly, the court orders Defendants, at their cost, to deliver to GS for destruction all counterfeit products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass trademarks (U.S. Trademark Registration Number 6,174,291, U.S. Trademark Registration Number 6,174,292, and U.S. Trademark Registration Number 6,633,884).

## CONCLUSION AND RECOMMENDATION

The court recommends that Plaintiff's Motion for Default Final Judgment Against Both Defendants (Dkt. #13) in member case 4:23-cv-241-SDJ-AGD be **GRANTED in part and DENIED in part.** The court further recommends that Shazad S Ali and Denton Smoke Shop LLC be **ORDERED** to each pay $3,000.00 to GS Holistic as statutory damages for trademark infringement. The court further recommends that Defendants be jointly and severally **ORDERED** to pay GS Holistic $402.00 for the costs of the action. The court finally recommends that Defendants, at their cost, be **ORDERED** to deliver to GS Holistic for destruction all counterfeit products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass trademarks (U.S. Trademark Registration Number 6,174,291, U.S. Trademark Registration Number 6,174,292, and U.S. Trademark Registration Number 6,633,884).

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.

28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of March, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE